**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**


**MARY & LARRY PATTERSON, ET AL.**                    **CIVIL ACTION**

                                                      **NO.  05-2177**
**VERSUS**                                            **c/w  05-2189**
                                                              **05-2191**

**DEAN MORRIS, ET AL.**

**and**

**ROBERT BAUER, ET AL.**                              **CIVIL ACTION**

**VERSUS**                                            **NO.05-2178**

**DEAN MORRIS, ET AL.**                               **SECTION "K" (4)**


## ORDER

        Before the Court is plaintiffs' Mary and Larry Patterson, et al's Motion to Remand (Rec.

Doc. Nos. 6, 9, 23), consolidated civil action number 05-2177, as well as plaintiffs' Robert

Bauer, et al's Motion to Remand (Rec. Doc. No. 26), civil action number 05-2178.  Having

reviewed the facts, pleadings, and extensive memoranda, as well as having heard oral argument

on August 24, 2005, the Court **GRANTS** each Motion for the following reasons:

1

I.      **Facts**

The instant motions arise from two separate class action cases that were originally filed by various plaintiffs in Orleans Parish Civil District Court ("CDC").  There is no substantive difference in the claims and facts surrounding each lawsuit; rather only the membership of each respective class differs.  The central defendant, Dean Morris, L.L.P., is the same in both cases. Plaintiffs in consolidated civil action number 05-2177[1] (the *Patterson* plaintiffs) represent *only* members of a putative class of persons "whose bankruptcy filing would or might [support] removal to federal court and/or federal jurisdiction for their claim."  See *Patterson* Rec. Doc. No. 1, Pl. Comp., ¶ 1.  Plaintiffs in civil action number 05-2178 (the *Bauer* plaintiffs) purport to represent all other Louisiana residents, specifically excluding any persons who are in bankruptcy.[2]  See *Bauer* Rec. Doc. No. 1, Pl. Comp., ¶ 1.  Due to the similarity of the claims asserted, as well as the dual Notices of Removal filed by all defendants and the dual Motions for Remand subsequently filed by plaintiffs' counsel on behalf of all plaintiffs (regardless of their membership in either the *Patterson* or the *Bauer* action), the Court will treat these Motions

---

[1]Civil action nos. 05-2189 and 05-2191 have been consolidated with civil action 05-2177.

[2]The original *Bauer* petition listed Keenan and Karen Duckworth as named plaintiffs.  It was subsequently brought to the Court's attention that prior to the filing of *Bauer* the Duckworths had sought bankruptcy protection and thus should have been excluded from the putative *Bauer* class.  In order to correct this error in their pleadings plaintiffs attempted to remove the Duckworths by filing a Motion to Dismiss them, without prejudice, from the *Bauer* case.  See *Bauer*, Rec. Doc. No. 111.  Lender defendant Deutsche Bank Trust Company Americas subsequently opposed the motion.  See *Bauer*, Rec. Doc. No. 124.  Prior to this filing Deutsche had filed its own Motion to Compel Arbitration and Stay Court Proceedings with respect to the Duckworths, see *Bauer*, Rec. Doc. No. 53, which plaintiffs opposed.  See *Bauer*, Rec. Doc. No. 85.  The Court has since granted the Motion to Compel Arbitration, see *Bauer*, Rec. Doc. No. 153, thereby rendering plaintiffs' Motion to Dismiss the Duckworths moot. Because the Duckworths are no longer parties to the *Bauer* action, the instant Order is rendered as if the Duckworths had not been named.

collectively.  Thus, the following facts apply to both actions.

On February 17, 2005 (via fax filing) and on February 22, 2005, plaintiffs filed two class action lawsuits in Orleans Parish Civil District Court.  On May 6, 2005, plaintiffs in both actions filed a First Supplemental and Amended Petition, each alleging fraud, misrepresentation, conversion, and unjust enrichment.  Plaintiffs allege that defendant Dean Morris L.L.P. overstated court costs, sheriff's fees, attorney's fees, and other expenses in collection and foreclosure proceedings instituted by defendants against them.  Plaintiffs further allege that lenders, collectively known as the "lender defendants," who used defendant Dean Morris as their attorney, agent, and/or employee with respect to collection or foreclosure activities, and for whom or during the representation of whom defendant Dean Morris collected excessive fees and/or charges from plaintiffs, are also liable. Plaintiffs allege that the lender defendants are liable for the knowing and negligent misrepresentations regarding these fees that were made by defendant Dean Morris on their behalf, and subsequently received by them from Dean Morris as a result of the foreclosures.  See *Patterson* Rec. Doc. No. 1, Pl. Comp., ¶ 28.  Plaintiffs allege that the misrepresentations made by or on behalf of all defendants constitute fraud, conversion, and unjust enrichment.   See *Patterson* Rec. Doc. No. 1, Pl. Comp., paras. 28-29.

Plaintiffs' petition defines the putative *Patterson* class as "All Louisiana residents (or their heirs, successors, or assigns) who were charged excessive fees and/or charges by a member of the Defendant Class by or through Dean Morris, L.L.P."  See *Patterson* Rec. Doc. No. 1, Pl. Comp., ¶ 1.  "The Plaintiff Class includes only those persons whose bankruptcy filing would or might support removal to federal court and or federal jurisdiction for their claim." Id.  Plaintiffs' *Bauer* petition defines the putative *Bauer* class as "all Louisiana residents . . . who were charged

3

excessive fees and/or charges by a member of the Defendant Class directly or by or through . . .

Dean Morris, L.L.P.  No person who is in bankruptcy is a member of the Plaintiff Class."  See

*Bauer* Rec. Doc. No. 1, Pl. Comp., ¶ 1. On June 8, 2005 the lender defendants removed both

cases to federal court based on federal bankruptcy jurisdiction and supplemental jurisdiction.

See *Patterson* Rec. Doc. No. 1, Joint Notice of Removal, p. 4; *Bauer* Rec. Doc. No. 1, Joint

Notice of Removal, pp. 4-6.  On July 29, 2005 *Patterson* lender defendants Saxon Mortgage,

Interbay Funding, L.L.C., Option One Mortgage Corporation, Countrywide Home Loans, Inc.,

Chase Home Finance, L.L.C., and Washington Mutual Bank, FA filed a Notice of Additional

Grounds for Removal Under the Class Action Fairness Act of 2005 ("CAFA").  See *Patterson*

Rec. Doc. No. 58.  That same day, *Bauer* lender defendants Chase Home Finance, L.L.C.,

Washington Mutual Bank, FA, Deutsche Bank Trust Company Americas, Ocwen Federal Bank

FSB, Countrywide Home Loans, Inc., and Bank One Corporation filed the same Notice of

Additional Grounds for Removal Under the Class Action Fairness Act of 2005 ("CAFA") in

*Bauer*.  See *Bauer* Rec. Doc. No. 44.  The Court held oral argument on the Motion to Remand on

August 24, 2005, at which time both sides were given leave to file additional supplemental

briefing on the CAFA issue.  After delays due to Hurricane Katrina, briefs were subsequently

submitted by both sides in October, 2005.  See *Patterson* Rec. Docs. Nos. 157 and 165; *Bauer*

Rec. Docs. Nos. 118 and 125.

At oral argument on August 24, 2005 plaintiffs reiterated that CAFA was inapplicable,

but conceded subject matter jurisdiction based on bankruptcy laws.  Despite this, plaintiffs aver

that the Court must remand this matter under 28 U.S.C. §142(b) on equitable grounds or

alternatively, apply permissive abstention under 28 U.S.C. §1332(c)(1), or apply mandatory

abstention under 28 U.S.C. §1334(c)(2).   The Court now turns to the merits of plaintiffs' Motion

and defendants' arguments in response.[3]

II.      **Subject Matter Jurisdiction and the Basis for Removal**

     A.      **Class Action Fairness Act of 2005 ("CAFA")**

Defendants allege that in addition to bankruptcy jurisdiction, the instant cases were

properly removed pursuant to the Class Action Fairness Act of 2005 ("CAFA"), Pub. L. No.

109-2, codified in 28 U.S.C. § 1332(D).   CAFA states that any class action commenced on or

after its February 18, 2005 enactment date may be removed where (a) any member of the

putative class action is a citizen of a state different from any defendant, and (b) the amount in

controversy exceeds the sum or value of $5 million.  28 U.S.C. §1332(D)(2).  Plaintiffs fax-filed

both complaints on February 17, 2005, the day before CAFA came into effect.  It is undisputed

that had plaintiffs filed their complaint on or after February 18, 2005 CAFA would have applied

and federal court jurisdiction would be uncontested with no possibility of remand.

Despite plaintiffs' February 17, 2005 fax filing date, defendants argue CAFA still

applies.  As to *Patterson,* defendants claim that plaintiffs failed to pay the required amount of

filing fees due, pursuant to the applicable fax filing statute, on February 22, 2005.  If true, this

failure would render plaintiffs' attempt to fax file on February 17, 2005 unsuccessful such that

their complaint would not be considered officially filed until either May 6, 2005 (the date that

plaintiffs filed their First Supplemental and Amending Class Action Petition for Damages) or

---

[3]Numerous filings have been made by both sides. Due to the identical nature of the facts
and arguments pertinent to the instant cases, and because all defendants oppose plaintiffs'
Motions to Remand, in the interests of expediency and efficiency, the court will treat all
arguments advanced by individual defendants collectively.

June 14, 2005 (the date that the balance of the fees owed by plaintiffs were deposited with the Clerk of Court).   In *Bauer* defendants argue that, despite the stamp marked "FILED Feb 17 2005 Deputy Clerk Civil District Court" (Rec. Doc. No. 1, Part 2), plaintiffs' fax filing was incomplete and thus invalid because there too plaintiffs failed to pay the requisite amount of filing fees required.  Defendants also point out that the plaintiffs failed to serve either petition on any defendants until May 2005.

Louisiana law allows for fax filing pursuant to La. R.S. 13:850.   Defendants assert that plaintiffs failed to fully comply with the provision by failing to provide the Clerk of Court with the full amount of filing fees within 5 days as required under the statute.  Defendants aver that on February 18, 2005, plaintiffs were notified via fax receipt from the Orleans Parish Clerk that the total filing fees were $5,127.00.  On February 22, 2005, five days after the February 17, 2005 fax file date, plaintiffs went to the Clerk of Court in Orleans Parish and paid a total of $3,039.00.  However, on May 12, 2005 plaintiffs received a letter from the Clerk stating that they owed an additional $2,145.50 which plaintiffs did not deposit until June 14, 2005.  Defendants contend that the May 12, 2005 letter proves that plaintiffs failed to file the requisite amount of filing fees within the prescribed time mandated by La. R.S. 13:850, and as such, their filing on February 17, 2005 is ineffective.  Consequently, defendants argue that all plaintiffs are bound by the provisions of CAFA and this case is properly within the purview of federal court.

Plaintiffs contend that CAFA is inapplicable as plaintiffs fax filed their actions in state court on February 17, 2005, the day before CAFA went into effect, and they timely paid "the applicable filing fee" as necessitated by the statute.  Plaintiffs argue that at all times they paid the full amount requested by the clerk and that they were entitled to rely on the CDC clerk's

6

assessment of the "applicable filing fee" on February 22, 2005.  Plaintiffs state that all fees paid

to the CDC clerk are non refundable, and the CDC clerk is not authorized to hold money on

account;  thus plaintiffs were only allowed to pay exactly the amount demanded by the clerk at

the time, specifically, the $3,039 which they paid.  Plaintiffs aver that because they paid what the

clerk demanded at the time, they are in compliance with the statute and their filing was effective

February 17, 2005 so CAFA does not apply.

### No Federal Jurisdiction under CAFA

Because CAFA mandates that a federal court receiving an action removed under its

provisions keep the action, this Court would be precluded from remanding the instant matter

back to state court on any ground should CAFA apply.  Neither mandatory nor permissive

abstention nor equitable remand would be allowed.  Defendants' argument that federal

jurisdiction exists pursuant to the Class Action Fairness Act because plaintiffs failed to satisfy

requirements for filing on February 17, 2005 is rejected.  In *Hall v. Reber*, 870 So.2d. 424 (La.

App.3 Cir. 3/31/04), the Court applied La. R. S. 13:1850,[4]  the statute governing the facsimile

---

[4]La. R.S. 13:1850(B) requires, within 5 days of the fax filing, delivery of  the original
petition, the *applicable filing* fee, and a transmission fee of five dollars.  The full statute
provides:

      A.      Any paper in a civil action may be filed with the court by facsimile transmission.
All clerks of court shall make available for their use equipment to accommodate
facsimile filing in civil actions. Filing shall be deemed complete at the time that
the facsimile transmission is received and a receipt of transmission has been
transmitted to the sender by the clerk of court. The facsimile when filed has the
same force and effect as the original.

      B.      Within five days, exclusive of legal holidays, after the clerk of court has received
the transmission, the party filing the document shall forward the following to the clerk:

      (1)      The original signed document.
      (2)      The applicable filing fee, if any.

filing of pleadings.   The plaintiff in *Hall* "faxed" his petition to the clerk of court's office on the last day for the prescriptive period, along with a check that covered some, *but not all* of the advance costs required by the Clerk.   Because the amount sent by the plaintiff covered the clerk's filing fee, but not the fees for service, the Court found that the plaintiff complied with the statute.  *Id.* at 427-28.

The Court finds that plaintiffs filed the appropriate amount to the clerk's office, both the filing fee and the fees for service, and, thus, plaintiffs satisfied the requirements of La. R.S. 13:1850.   As plaintiffs point out, the costs were stamped as PAID, and it was not until significantly later that the clerk notified plaintiffs that further fees were owed due to a mistake by the clerk's office.   Defendants' argument that plaintiffs cannot rely on the clerk's first ( and apparently erroneous) calculation is without merit.   Firstly, Orleans Parish is a "pay-as-you-go" system where all monies paid are non-refundable and no credit is extended.   Thus even if plaintiffs had argued with the intake clerk on February 22 about the amount of fees owed and insisted, over the clerk's objections, that more money must be paid, the clerk could not, nor would not, have accepted it absent a court order.   The idea that plaintiffs should have insisted the clerk take the money or obtained leave of court to pay more than demanded is impractical.   The clerk's office does not extend credit of any kind for payment of fees, be it overpayment or underpayment.

---

(3)     A transmission fee of five dollars.

C.     If the party fails to comply with the requirements of Subsection B, the facsimile filing shall have no force or effect. The various district courts may provide by court rule for other matters related to filings by facsimile transmission.

8

Defendants cite to numerous cases in support of their argument that plaintiffs alone are ultimately responsible for the proper calculation and payment of all filing fees, regardless of the representations made by the clerk's office.  These cases are factually distinguishable from the case at hand.  Defendants cite *C.B. Mabou v. Thomas Jefferson Ins. Co.*, 321 So. 2d 786 (La. App. 3d Cir. 1975), a case where one appellant, *after inquiry to the clerk* of the amount required, promptly paid the costs due to maintain an appeal and was allowed to proceed, but another appellant, despite the same information, failed to do so.  This appellant's appeal was denied on the basis that counsel was aware of the return date of the appeal and of his duty to timely tender all fees but still failed to pay timely *any* of the costs required.  *See Mabou*, 321 So.2d at 788. Here plaintiffs actions are akin to the first upheld appellant in *Mabou*.  Plaintiffs came prepared to pay, pursuant to their own calculations, greater fees than what were actually demanded by the clerk.  Like the party in *Mabou*, upon being told by the clerk exactly what amount to pay, plaintiffs promptly did so.  *AMFAC Drug Supply Co. v. Drago*, 358 So.2d 962 (La.App. 1st Cir. 1977) also cited by defendants, deals with an appeals case where *no* attempt was made to pay *any* fees associated with the appeal.  *Neeley v. Murchison*, 815 F.2d 345, 347 (5th Cir. 1987) deals with a clerk's failure to provide formal notice of the date by which objections to a debtor's discharge from bankruptcy must be filed, and not with the payment or non-payment of filing fees.  *Spinetti v. Atlantic Richfield Co.*, 552 F.2d 927, 930 (Temp.Emer.Ct.App. 1976) held that parties are not entitled to rely on the "advice" of clerk's office personnel as to what procedural documents are necessary to perfect an appeal.  This truism has little relevance to the situation at hand, namely a clerk's demand of a sum certain in fees, in the form of a confirmation fax dated

9

February 18, 2005 stating the amount of fees owed.[5]  It is undisputed that plaintiffs attempted to pay that amount, and once the fees demanded were paid, the clerk generated a receipt to that effect.

Additionally, the Court's own inspection of the fee schedule in effect at the time of plaintiffs filing reveals that the total amount due by plaintiff was far from self-explanatory.  The Court was unable to discern the exact breakdown of fees for a class action complaint involving multiple parties, as no clear itemization is provided.  Specifically, the Court finds it was reasonable for plaintiffs to believe that included in the "class action" filing fee of $2996.50  was service on the extra plaintiffs and extra defendants that normally constitute a class action.  By definition class actions involve multiple parties and it is no great leap to think that such a large fee, given its label and amount, would suffice as the total filing fee, including service on all parties.

Finally, the Louisiana statute says "payment of the applicable filing fee."  La. R.S. 180(B)(2).  Plaintiffs' receipts xeroxed onto the original *Patterson* complaint filed in Orleans Parish say "class action lawsuits" next to the amount of $2996.50, and the Court accepts this receipt as proof that such an amount was indeed paid.  Defendants have put forth no other evidence that the $2996.50 next to "class action lawsuits" is anything other than the filing fee applicable to effect a class action, and it is notable that on none of the other receipts in the record do the words "class action lawsuit" appear.[6]  Additionally, the clerk's letter dated May 12, 2005

---

[5]While not dispositive, the Court notes this fax confirmation indicates February 17, 2005 as "date pleading filed."  See *Patterson* Rec. Doc. No. 60, p. 9.

[6]Other terms used with varying amounts include, "Indig Leg Fee-$10.00;" "Miscellaneous-$32.50;""Supplemental Petitions-$90.00."

to plaintiffs requesting an additional $2,145.50 also lists the $3,006.50 previously paid as "Petition Fee." See *Patterson*, Rec. Doc. No. 60, Exhibit E. Thus the Court finds that these facts are sufficient to hold that plaintiffs effectively filed their class action complaint on Feb. 17, 2005, one full day prior to CAFA's enactment. Consequently CAFA is inapplicable in both of these matters.

**B.    Bankruptcy Jurisdiction Under 28 U.S.C. § 1334 and Removal Under 28 U.S.C. § 1452(a)**

**1.    Bankruptcy Jurisdiction**

Having found that CAFA is inapplicable the Court now turns to defendants' other basis for removal, bankruptcy jurisdiction. District courts have bankruptcy jurisdiction over four types of matters: (1) cases *under* title 11; (2) proceedings *arising under* title 11; (3) proceedings *arising in* a case under title 11; and (4) proceedings *related to* a case under title 11. *See* 28 U.S.C. § 1334[7](emphasis added); *see also Hospital Service Dist. No. 3 of the Parish of LaFourche v. Fidelity & Deposit Co. of Maryland*, 1999 WL 294795, *1 (E.D.La.1999). Regarding *Bauer*, defendants argue in their Notice of Removal that this Court has bankruptcy jurisdiction because two named plaintiffs, Keenan and Karen Duckworth, have previously sought bankruptcy protection. See *Bauer*, Rec. Doc. No. 1-1, Joint Notice of Removal, ¶8. In a separate motion plaintiffs contended that inclusion of the Duckworths was a pleading error and

---

[7]28 U.S.C. § 1334 provides:

(a)    Except as provided in subsection(b) of this section, the district court shall have original and exclusive jurisdiction of all cases under title 11.

(b)    Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.

11

they sought to dismiss the Duckworths from *Bauer*.  Lender defendant Deutsche Bank Trust Company Americas opposed this dismissal and filed a separate Motion to Compel Arbitration of the Duckworth's claims, which was granted by the Court.  See *supra*,note 2; see also *Bauer*, Rec. Doc. No. 153.   Thus the premise listed in defendants' original Joint Notice of Removal, that of bankruptcy jurisdiction due to the presence of the Duckworths, is necessarily undermined, and bankruptcy jurisdiction cannot serve as an adequate basis for removal of *Bauer*.  *Bauer* contains only state law claims,[8] and because the Court has now dispensed with both defendants' CAFA and bankruptcy jurisdiction arguments, the Court finds no valid grounds of removal remain as to *Bauer*, and it must be remanded.

As to *Patterson,* plaintiffs concede this Court has jurisdiction under the Title 11 bankruptcy statute, but they argue that mandatory abstention or alternatively, permissive abstention or equitable remand applies.   Because applicability of any of these doctrines turns on whether the Court finds that plaintiffs' claims are either "related to," "arising in" or "arising under" bankruptcy jurisdiction pursuant to 28 U.S.C. § 1334, the Court finds some background on these terms is necessary.  The first category refers to actual bankruptcy petition filed by each bankrupt plaintiff and is not at issue here because plaintiffs' actual petitions are not before the Court.  *See In the Matter of Wood v. Wood*, 825 F.2d 90, 92 (5th Cir. 1987).  As to the remaining two categories, the Fifth Circuit has determined that these categories "operate conjunctively to define the scope of jurisdiction,"*id*. at 93, so that as long as the matter is at least "related to"

_____

[8]See also defendant Deutsche Bank Trust Company Americas' Motion To Compel Arbitration and Stay Court Proceedings as to plaintiffs Keenan and Karen Duckworth (*Bauer* Rec. Doc. No. 53), p. 11 ("The only claims asserted in the *Bauer* petition are state law claims arising out of the activities of the defendants named therein . . . [t]he *Bauer* petition does not identify, allege, or implicate and federal statute or policy whatsoever.").

bankruptcy, subject matter jurisdiction exists.  *Id.*   A matter is "related to " bankruptcy when "the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy," *id*. (citing *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d. Cir. 1984)), such that "the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and [impact] the handling and administration of the bankruptcy estate."  *In re Walker v. Cadle Co.*, 51 F.3d 62, 569 (5th Cir.1995); *see also Celotex Corp. v. Edwards*, 514 U.S. 300, 308 n. 6 (1995).  Bankruptcy courts have no jurisdiction over proceedings that have no effect on the debtor.  *See Id.*; *see also Hospital Service Dist. No. 3*, 1999 WL 294795 at *5.  The Fifth Circuit has interpreted the phrase "arising under title 11" to delineate those proceedings that involve a cause of action that is determined by a *statutory provision* of title 11.  The phrase "arising in" refers to *administrative* matters that arise only in bankruptcy cases.  *See Wood*, 825 F.2d at 96; *see also Landry v. Exxon Pipeline Co.*, 260 B.R. 769, 776 (M.D.La. 2001).

### 2.      Removal

Removing a state court lawsuit to a federal bankruptcy court is appropriate where removal is permitted under the bankruptcy removal statue, 28 U.S.C. § 1452(a), or under the general removal statue, 28 U.S.C. § 1441.  *See In re Ciclon Negro, Inc. et al v. RCA Trawlers & Supply*, 260 B.R. 832, 835 (S.D.Tex. 2001).    28 U.S.C. § 1452(a) states that a party "may remove any claim or cause of action in a civil action . . . to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title."  Id.

Besides CAFA, which the Court has already found to be inapplicable, defendants rely

13

solely on 28 U.S.C. § 1452(a) as statutory authority to remove plaintiffs' suit from state court.

The removal standard in this section is more generous than that provided in 28 U.S.C. § 1441,

*id.,* so that once a state court lawsuit has been removed pursuant to § 1452(a), the court "may

remand such claim or cause of action on *any equitable ground*." 28 U.S.C. § 1452(b)(emphasis

added).  Conforming with the generous standard in § 1452(a), the equity standard governing

remand under § 1452(b) provides the Court with a "much broader range of discretion in deciding

whether to remand than under the technical and procedural requirements of § 1447(c)."  *In re

Ciclon Negro, Inc*, 260 B.R. at 835; *see also O' Rourke v. Cairns*, 129 B.R. 87, 89

(E.D.La.1991).  Specifically, should the Court choose to remand on equitable grounds, such a

remand is not appealable. *See Arnold v. Garlock*, 278 F.3d 426, 438 (5th Cir. 2001).

Plaintiffs concede bankruptcy jurisdiction, and the Court finds this case was properly

removed pursuant to title 11 bankruptcy jurisdiction.  The Court now turns to plaintiffs'

arguments in favor of remand.

## C.      Remand [9]

While 28 U.S.C. § 1452(a) provides for removal of state court proceedings to federal

court if bankruptcy jurisdiction is present, § 1452(b) "provides the mechanism by which the

court to which the action is removed may remand the matter back to state court." *Landry*, 260

B.R. at 801. Although plaintiffs do not contest that this Court has subject matter jurisdiction

---

[9]Importantly, §1334(b) confers original *but not exclusive* jurisdiction to the federal courts
"for proceedings either 'arising under title 11,' 'arising in . . . cases under title 11,' or 'related to
. . . cases under title 11.'" *Landry*, 260 B.R. at 780.  This distinction is important because if the
matter were one over which the federal courts have exclusive jurisdiction remand would
effectively act as a *dismissal* of the suit because plaintiffs could not proceed in a court without
jurisdiction. *Id.*(emphasis added).

under the bankruptcy code to hear their claims, they argue that even if the Court has bankruptcy

jurisdiction over their claims, the Court should still abstain and equitably remand this case to

state court pursuant to its powers under § 1452(b).

Here, defendants removed the case pursuant to the bankruptcy removal powers under

§ 1452(a).  Should the Court choose to remand the case, it has three choices available, depending

on whether plaintiffs' claims are "related to," "arising in," or "arising under" bankruptcy:

mandatory abstention under 28 U.S.C. § 1334(c)(2); discretionary abstention under 28 U.S.C. §

1334(c)(1); and/or equitable remand under 28 U.S.C. § 1452(b).  The Court will now explore

each of the options.

> 1.      **Abstention**[10]

>> a.      **Mandatory Abstention pursuant to 28 U.S.C. § 1334(c)(2)**

Plaintiffs contend that even if their claims are "related to" a bankruptcy proceeding, the

Court must abstain from hearing the case pursuant to section 1334(c)(2) because the test for

mandatory abstention is met.   Section 1334(c)(2) of 28 U.S.C. provides for *mandatory*

*abstention* of certain state law claims:

> Upon timely motion of a party in a proceeding based upon a State law claim or State law
> cause of action, **related to** a case under title 11 **but not** arising under title 11 or arising in
> a case under title 11, with respect to which an action could not have been commenced in

---

[10]Courts are split on the question of whether the abstention provisions of §1334(c)(2), including those involving discretionary abstention, apply to cases removed under §1452(a). Some courts hold that mandatory or discretionary abstention is inapplicable in the context of a removed action because there is no pending parallel state action.  *See KSJ Dev. Co. of La. v. Lambert*, 223 B.R. 677, 679 (E.D.La. 1998).  Other courts continue to apply the doctrine of abstention.  *See Borne v. New Orleans Health Care, Inc.*, 116 B.R. 487, 493 n.25 (E.D.La. 1990).  Because the Court finds that plaintiffs' claims constitute core proceedings under the terms of § 1334(c)(2), and as such, are ineligible for mandatory abstention, the Court need not take a position on the split at this time.

a court of the United States absent jurisdiction under this section, the district court **shall abstain** from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.  28 U.S.C. § 1334(c)(2) (emphasis added).

Restated, the three requirements for mandatory abstention are (1) the proceeding is based on a state law claim, which although related to a title 11 case, does not arise under title 11 or arise in title 11; (2) the proceeding could not have been commenced in federal court but for the bankruptcy; and (3) an action is commenced in state court which can timely adjudicate the cause of action.  *Id.*  Consequently, a district court must abstain from hearing state law claims if: (1) the claims have no independent basis for federal jurisdiction other than § 1334(b); (2) the claims are non-core; (3) an action has been commenced in state court; and (4) the action can be adjudicated timely in state court. *See In re Rupp & Bowman Co.,* 109 F.3d 237, 239 (5th Cir. 1997) (referencing *In re Gober,* 100 F.3d 1195, 1206 (5th Cir.1996)).

Proceedings "related to" a case under title 11 but not "arising under" or "arising in" title 11 *may* be subject to mandatory abstention.  28 U.S.C. §§ 157(b)(1), 1334(c)(2); *see also Hospital Service Dist. No.3,* 1999 WL 294795 at *7. But, mandatory abstention applies *only* to "non-core" proceedings.  The Fifth Circuit has held that a proceeding is considered "core" under section 157 "if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy proceeding." *Wood*, 825 F.2d at 97. Proceedings found to either "arise under" or "arise in" title 11 constitute "core" proceedings and thus are not eligible for mandatory abstention. *Id.*

As previously discussed, the instant claims have no independent basis for federal jurisdiction other than §1334(b).  Further, a corresponding action has been commenced in state court, and there is no suggestion that it would not be adjudicated in a timely fashion.  However,

16

for mandatory abstention to apply, *all* four prongs must be met so a question remains as to

whether plaintiffs' claims can properly be considered "non-core."   Core proceedings include:

>   (A) matters concerning the administration of the estate;
>
>   (B) allowance or disallowance of claims against the estate;
>
>   (C) counterclaims by the estate against persons filing claims against the estate;
>
>   . . .
>
>   (O) other proceedings affecting the liquidation of the assets of the estate or the
>   adjustment of the debtor-creditor . . . relationship, except personal injury tort or wrongful
>   death claims.  28 U.S.C. § 157(b)(2).

Additionally, "the . . . judge is to determine whether a proceeding is core or non-core, but [a]

determination that a proceeding is not a core proceeding shall not be made solely on the basis

that its resolution may be affected by state law."  *Bank of Lafayette v. Baudoin*, 981 F.2d 736,

741 (5th Cir. 1993).   "A  response to a proof of claim which is, in essence, a counterclaim, is a

core proceeding under 28 U.S.C.§ 157(b)(2)."  *Id.*  Moreover, under 28 U.S.C. § 157,

proceedings that are within the categories of "arising under" and "arising in" are core

proceedings;  therefore, "a  proceeding is core under § 157 if it invokes a substantive right

provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a

bankruptcy case."  *In re Lorax Corp.*, 295 B.R. 83, 89 (Bankr.N.D. Tex., 2003)(citing *In re

Wood*, 825 F.2d 90, 97 (5th Cir. 1987)).

Defendants argue that this case both "arises under" and "arises in" a title 11 claim so that

mandatory abstention is inapplicable.  This proceeding contains matters that  "arise in" a case

under Title 11 because it involves enforcement of prior bankruptcy orders, decrees, or

judgments.  Specifically, defendants allege that none of the plaintiffs' chapter 13 plans,

confirmed by the bankruptcy court ("confirmation orders") includes any provision allowing them

to pursue any cause of action, claim, counterclaim, or right of setoff against any of the

defendants.  Defendants also argue that a timely resolution of plaintiffs' claims could not possibly occur in state court because (1) several critical issues intertwine with bankruptcy proceedings; (2) these issues implicate matters of the bankruptcy code and procedure, which are routinely assessed by federal courts;  and (3) defenses will be raised originating in substantive federal bankruptcy law.  Furthermore, defendants argue that class certification determinations will require an assessment of the status of multiple individual bankruptcies, and plaintiffs have not met their burden of establishing that the state court can timely resolve this matter.

Defendants also argue that the Court has exclusive jurisdiction under 28 U.S.C. § 1334(e) which provides that the district court in which the bankruptcy case is pending has exclusive jurisdiction over all property of the estate.   Defendants argue that plaintiffs' causes of action against defendants arose pre-petition and, therefore, are property of the bankruptcy estates over which this Court has exclusive subject matter jurisdiction pursuant to 11 U.S.C. § 541(a).  *See Dixon v. First Family Fin. Servs.*, 276 B.R. 173, 181 (S.D. Miss. 2002)(court has jurisdiction over debtor's pre-petition cause of action under 28 U.S.C. §1334(e)).  Defendants argue that this civil action raises "core" bankruptcy matters pursuant to 28 U.S.C. §157(b)(1) because the suit will require the bankruptcy court to determine whether the cause of action is property of, and should be administered in, several of  plaintiffs' individual bankruptcy estates, and it is a bankruptcy court that is in the best position to determine whether these claims are indeed assets of bankrupt estates.

The Court finds that the instant case is not merely "related to" bankruptcy but instead constitutes a *core proceeding* under the bankruptcy code.  Thus mandatory abstention does not apply.  In *Bank of Lafayette v. Baudoin*, 981 F.2d 736, 741 (5th Cir. 1993), the Fifth Circuit

affirmed the district court opinion which found that plaintiffs' lender liability claims against its creditors in bankruptcy court were precisely the type that fits in "the catch-all provision's narrow ambit" of § 157(b)(2)(O), namely "the liquidation of assets of the estate or the adjustment of the debtor-creditor relationship." *Id*.   In the case *sub judice*, at least some of plaintiffs' claims against defendants are analogous to the facts in *Baudoin* where petitioners who had already declared bankruptcy brought lender liability claims against the Bank of Lafayette, a creditor in their earlier Chapter 7 bankruptcy proceedings.  The claims against the bank were not brought until almost three years after discharge of original Chapter 7 case.  The Fifth Circuit held that the lender liability claim would have been a "core proceeding" in the earlier bankruptcy actions, and thus the Baudoin's state action was barred by *res judicata*.  Based on *Baudoin*, because plaintiffs and defendants were a part of the same bankruptcy proceedings in which defendants filed proof of claims and plaintiffs failed to counterclaim in response therein, this Court finds that the particular claims filed by plaintiffs against defendants are core proceedings.  However, the Court notes its concern that unlike here, where a complete list of facts regarding the bankruptcies of each plaintiff is *not* in the record, most cases that find that "core proceedings" exist are privy to a much more detailed history concerning, *inter alia*, the bankruptcy proceedings, the parties involved, and the bankruptcy judge's ruling for each named plaintiff.

Furthermore, the Court finds this case will require the analysis of issues which "arise under" title 11 because this case involves "a matter invoking a substantive right created by the bankruptcy code." *In re Toledo*, 170 F.3d 1340, 1345 (11th Cir. 1999).  Here defendants seek to bar plaintiffs' claims pursuant to 11 U.S.C. § 1327(a) which states that the provision of a confirmed chapter 13 plan of reorganization binds the debtor and its creditors.  Essentially

defendants contend that plaintiffs, by use of the instant lawsuit, are attempting to thwart the provisions of their previously confirmed chapter 13 bankruptcy orders which do not allow for the maintenance of any pre-petition causes of action like the ones they now assert.  Defendants seek to invoke their substantive rights under section 1327(a) to bar the plaintiffs' from bringing any claims that were not provided for in their plans.  The Court finds that any attempt by defendants to invoke their rights under section 1327(a) would necessarily involve the "substantive rights," created under the Bankruptcy Code; thus "arising under" jurisdiction exists over plaintiffs' claims.  Additionally, there is "arising under" jurisdiction because this case could require a court to construe and enforce confirmation orders. *See In re Fisher*, 242 B.R. 908, 911 (Bankr. E.D. Tex. 1999)("Requests for bankruptcy courts to construe their own orders must be considered to arise under Title 11 if the policies underlying the Code are to be effectively implemented.").

As to defendants' argument that the claims of plaintiffs are property of their individual bankrupt estates, and thus any action to recover proceeds paid involves an adjudication of rights in and to property in a bankruptcy estate that must be adjudicated in bankruptcy court, this Court finds that plaintiffs' state court suit is not an *in rem* action by plaintiffs to recover property of the estate. Instead the suit is an *in personam* action to establish liability and a right to be paid for the damages allegedly suffered by plaintiffs due to defendants' alleged fraud.  *Landry*, 260 B.R. at 782-83.  If the state court suit results in a finding of liability against defendants, plaintiffs would nonetheless be bound to seek a disbursal or refund from the bankruptcy court because "regardless of whether the state court has concurrent jurisdiction with the bankruptcy court to determine issues of liability related to . . .bankruptcy, the [bankruptcy court] has exclusive jurisdiction over the property necessary to satisfy the judgment."  *Id*. at 783.  "But, as it stands,

20

the imposition of liability is separate and distinct from the satisfaction of that liability.  As such, the exclusivity of federal jurisdiction over property of the estate does not extend to resolution of a claim which might, or will, have as its *telos* the distribution of property of the estate.  The exclusivity extends only so far as the actual distribution, management, and control of that property is concerned." *Id*.  The Court holds that even if any judgment eventually received by plaintiffs in this action is considered property of their bankrupt estates, the state court suit does not contravene section 1334(e) because it does not seek a judgment recognizing *ownership* of proceeds, but rather only seeks an affixation of liability.  If needed, execution of such a judgment can easily be had by a federal forum.  *See Id*. at 783 n.47.

To reiterate, because mandatory abstention does not seem to apply to those specific fact patterns that fit *Baudoin,* and based on the record available, the Court finds enough similarity here to apply *Baudoin's* reasoning to this case, mandatory abstention does not apply to this case. Furthermore, the Court finds this case will require the analysis of issues which "arise under" title 11 because this case involves invocation of a substantive right created by the bankruptcy code, specifically an attempt by defendants to invoke their rights under section 1327(a).  However, the fact that this action a core proceeding is ultimately not determinative of whether the case should be remanded, as other issues, discussed below, still remain.  *See Chickaway v. Bank One*, 261 B.R. 646 (S.D. Miss. 2001).

### b.      Discretionary Abstention and Equitable Remand

Discretionary ("permissive") abstention is governed by 28 U.S.C. § 1334(c)(1) which states  "nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular

proceeding arising under title 11 or arising in or related to title 11."  28 U.S.C. § 1334(c)(1).

Thus this Court may abstain from hearing a core proceeding when to do so is in the interest of

justice, or in the interest of comity with state courts or respect for state law.[11]   When deciding to

remand, courts often rely on 28 U.S.C. § 1452(b) (the provision for remanding an action

removed under § 1452(a)) in conjunction with the permissive abstention principle of 28 U.S.C. §

1334(c)(1).  *See Terral v. SCH Management Solutions, Inc.*, 2004 WL 2115486 *1, *3 (E.D.La.

Sept. 21, 2004).  Section 1452(b) provides that the "court to which such claim or cause of action

is removed may remand such claim or cause of action on *any equitable ground,*" and an "order

entered under this subsection remanding a claim or cause of action . . . is not reviewable by

appeal or otherwise by the court of appeals under section 158(d), 1291, or 1292 of this title . . ."

*Arnold v. Garlock,* 278 F.3d 426, 438 (5th Cir. 2001)(emphasis added).  Consequently, "once a

matter related to a bankruptcy case is equitably remanded, it is not subject to federal appellate

review on any basis."  *Id.*; *see also* 28 U.S.C. §1452(b); *In re Ciclon Negro, Inc.*, 260 B.R.

832,834 (S.D. Tex. 2001)(citing *Hawking v. Ford Motor Credit Co.*, 210 F.3d 540, 550(5th Cir.

2000) and *Browning v. Navarro*, 743 F.2d 1069, 1076-77 (5th Cir. 1984)).

        The Court discusses these provisions together "because the considerations underlying

discretionary abstention and remand are the same,"  *Borne v. New Orleans Health Care, Inc.*,

116 B.R. 487, 494 (E.D.La. 1990), because § 1452(b) (remand) and § 1334(c)(discretionary

abstention) favor comity and the resolution of state law questions by state courts.  Courts

---

        [11]The "arising under" and "arising in" language of §1334(c)(1) is identical to the criteria
used when determining bankruptcy jurisdiction; thus if a matter is properly removed to a court
with "arising" jurisdiction, the abstention provisions of §1334(c)(1) may be considered.  *See In
re Norrell*, 198 B.R. 987, 995 n.7 (N.D.Ala.1996).

recognize that decisions to remand an action and decisions to abstain from hearing an action produce the same results. *See Norrell,* 198 B.R. at 997-98.  Taken together these sections "strongly evince a congressional policy that, absent countervailing circumstance, the trial of state law created issues and rights should be allowed to proceed in state court, at least where there is no basis for federal jurisdiction independent of § 1334(b) and the litigation can be timely completed in state court." *Id*. at 998.  Thus, "circumstances which weigh in favor of discretionary abstention [under 1334(c)] likewise weigh in favor of . . . remand under §1452(c)." *Id*.  "The presence of factors suggesting discretionary abstention . . . [provide] ample equitable grounds for remand of a lawsuit to state court," *id.*, precisely because the considerations underlying discretionary abstention are the same as those considerations underlying a determination to remand. *See Borne,* 116 B.R. 3 at 494.

"Various formulations of the relevant considerations exist," *id.*, but most courts use those factors outlined in *Browning v. Navarro,* 743 F.2d 1069, 1077 n. 21 (5th Cir.1984).[12]  In *Browning*, the Fifth Circuit identified several factors that may be considered in deciding whether equitable remand is appropriate, including:

    (1)      forum non conveniens;

    (2)      if the civil action has been bifurcated by removal, the entire action should be tried in the same court;

    (3)      whether a state court is better able to respond to questions involving state law;

    (4)      the expertise of a particular court;

---

[12]*See, e.g., KSJ Development Co. v. Lambert,* 223 B.R. 677 (E.D.La.1998); *Hospital Service Dist. No. 3 of the Parish of LaFourche v. Fidelity & Deposit Co. of Maryland*, 1999 WL 294795, *1 (E.D.La.1999); *In re Norrell*, 198 B.R. 987 (N.D.Ala.1996); *Terral v. SCH Management Solutions, Inc.*, 2004 WL 2115486 *1, *3(E.D.La. Sept. 21, 2004).

(5)      duplicative and uneconomic effort of judicial resources in two forums;

(6)      prejudice to the involuntary removed parties;

(7)      comity considerations; and,

(8)      a lessened possibility of an inconsistent result.[13]

See *Browning v. Navarro*, 743 F.2d 1069, 1077 n. 21 (5th Cir.1984).[14]  These factors are non-

exhaustive, and, per the statute,  the presence of "any equitable ground" is a sufficient basis for

remand, whether listed or not.  *See In re Ciclon Negro*, 260 B.R. at 837.

### Application of the Factors

Plaintiffs argue that the Court should remand this action because, *inter alia*, state law

_____

[13]*Browning* specifically referred to 28 U.S.C. §1478(b), the same-language predecessor to §1472(b).  The re-numbering of the section imposed no substantive change.  *Borne*, 116 B.R. at 494 n.31 *(citing Sykes v. Texas Air Corp.*, 834 F.2d 488, 489 (5th Cir. 1987).

[14]Other courts, building off of the *Browning* list, look to additional factors as outlined by the bankruptcy court in *In re Republic Reader's Service, Inc.*, 81 B.R. 422, 429 (Bankr. S.D. Tex. 1987), used by the court to recommend abstention in that case.  These include:

1)      the effect (or lack thereof) on the efficient administration of the bankruptcy estate if the matter is remanded;

2)      the extent to which state law issues predominate over bankruptcy issues;

3)      the difficulty or unsettled nature of the applicable law;

4)      the presence of a related proceeding commenced in state court or other non-bankruptcy court;

5)      the jurisdictional basis, if any, other than 28 U.S.C. § 1334;

6)      the degree of relatedness or remoteness of the proceeding to the main bankruptcy case;

7)      the substance rather than form of an asserted "core" proceeding;

8)      the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court;

9)      the burden on the Court's docket;

10)     the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties;

11)     the existence of a right to a jury trial; and

12)     the presence in the proceeding of non-debtor parties.

*Id.; see also Borne*, 116 B.R. at 494-495; *In re Ciclon Negro*, 260 B.R. at 837; *Landry,* 260 B.R. at 801-802.

issues predominate, state courts are better equipped to decide questions of state law, there are

non-debtor and non-bankruptcy related parties in this case, and this action could not have been

commenced in federal court absent this Court's bankruptcy jurisdiction.  Plaintiffs also point out

that to keep this action in federal court could not only prejudice those plaintiffs that were

involuntarily removed, but also that their motion to remand was timely filed and there is no

support for the contention that this case will be resolved more quickly in a federal forum than in

state court.  Plaintiffs point to *Harris v. Citigroup*, 298 B.R. 897 (Bankr.M.D.Ala., Apr. 17,

2003), where the court remanded an action  even though the plaintiff did not disclose the cause

of action as an "asset" on her bankruptcy schedule.  In *Harris*, the Court found that the

defendants' estoppel and other defenses could be adjudicated in state court.  *See Id.*  In *Lee v.

Miller*, 263 B.R. 757 (S.D.Miss., Mar. 19, 2001), the plaintiff's state court claims were held to be

property of the bankruptcy estate, but the court abstained and remanded anyway, finding that 28

U.S.C. § 1334(e) did not grant the court exclusive jurisdiction over the *res* of the bankruptcy

estate.  *Id.* While the plaintiff's state law claims in *Lee* were not related to the plaintiff's

bankruptcy case, the court gave an in-depth analysis of section1334(e) and concluded it did not

automatically provide the district court with original and exclusive jurisdiction. *See Id.*

By contrast, defendants argue that this Court is the proper forum because of the federal

forum's expertise with bankruptcy issues and the possibility of referral to bankruptcy court.

Defendants argue that this case is so enmeshed with bankruptcy issues that it must remain in a

federal forum, since, should plaintiffs eventually recover damages, any sums owing to bankrupt

plaintiffs would have to be administered by the bankruptcy court which handled their estates.

Defendants state that in order to avoid the potential likelihood of inconsistent results, the action

should remain at the federal level.  They further argue that by keeping the case in federal court there will be no waste of judicial resources because the case has only *recently* been commenced in state court.  Finally, defendants aver that plaintiffs fail to show any prejudice to involuntarily removed parties or the presence of comity concerns.

The Court finds that pursuant to 28 U.S.C. § 1452(b) this matter is to be equitably remanded.  As to the particular factors used in making this determination, the Court finds that as to *forum non conveniens* (factor 1),  the state court and the federal court forums are equally convenient.  Concerns over bifurcation (factor 2) may seem irrelevant because the action has not yet been bifurcated, and thus currently remains centralized in one court; however, bifurcation of the action with liability and damages to be determined in a nonbankruptcy (state) forum and status and enforcement to be left to a bankruptcy (federal) court is allowable.  *See In re Republic Reader's Service, Inc. v. Magazine Service Bureau, Inc.*, 181 B.R. 422, 429 (Bankr.S.D.Tex. Dec. 18, 1987).

As to whether a state court is better able to respond to questions involving state law (factor 3) and the expertise of a particular court (factor 4), the Court finds that despite defendants' attempts to cast plaintiffs' claims as those necessarily invoking the expertise of the federal bankruptcy court, this is essentially a state law action where state law issues predominate.  As such, while this Court is well-versed in the interpretation and application of state law, this Court finds that it is the state court which has the particular expertise to decide the state law questions of fraud, unjust enrichment, civil conversion and vicarious liability that predominate in this case.  Buttressing this finding is the Court's finding that there is no basis for federal jurisdiction over this case other than §1334 bankruptcy jurisdiction and, absent their

26

bankruptcies, plaintiffs' state law claims could have proceeded *only* in state court. *See Terral*, 2004 WL 2115486 at *4.

As to judicial economy (factor 5), the Court has previously stated that the related *Bauer* action must be heard in state court because neither CAFA nor bankruptcy jurisdiction exists in that case. *Bauer* contains only state law claims[15], the same state law claims which predominate in *Patterson*. Given the relatedness of *Patterson* to *Bauer*, specifically the similarity of the claims alleged and the facts involved in both actions, as well as the fact that *Bauer* will be heard in a state forum, the Court finds that judicial economy is best realized if *Patterson* is also heard in state court. The state court is currently in the best posture to provide a prompt resolution of all the state law issues involved in the two actions. The Court sees no reason why, if liability is found at the state level and certain plaintiffs' estates are in a posture such that any proceeds must be turned over to a trustee, this cannot be done in the same economic fashion as would occur had this Court retained jurisdiction. *See In re Republic Reader's Service, Inc.*, 181 B.R. at 430.

Neither plaintiffs nor defendants have requested a jury (factor 6) so the right to such is theoretically neutralized for the purposes of this analysis. However, "where such [a] right exists, whether waived or not, it is indicative that, in the absence of federal issues which give a right to a jury trial, a state law claim lies at the heart of the action." *In re Republic Reader's Service, Inc.*, 181 B.R. at 428. There are no federal questions in this case that would allow a jury; rather only the state law claims present could create this right. Consequently, the Court finds the existence of a right to a jury trial supportive of its decision finding that state law issues predominate in this case.

---

[15]See *supra*, note 8.

As to issues of comity (factor 7) this Court will, in the interests of comity, extend the courtesy to the state court of interpreting its own laws.  As defendants point out, there seem to be no novel state law claims or areas of state law that will be developed  as a result of this action; as such the state court should be able to competently and adequately handle plaintiffs' claims in a timely fashion.  Finally, the likelihood of inconsistent results (factor 8) will be diminished by the fact that the state court alone will oversee the fixation (if any) of liability.

Consequently, for the reasons stated above, the Court finds that jurisdiction over *Patterson* exists, but that pursuant to the Court's discretion and its analysis of the factors above, the matter should be equitably remanded to the state court.

Accordingly,

**IT IS ORDERED THAT** plaintiffs' Motion to Remand is hereby **GRANTED** pursuant to 28 U.S.C. §1452(b), and Civil Action No. 05-2177, consolidated with Civil Action Nos. 05-2189 and 05-2191, are all hereby equitably **REMANDED** to the Civil District Court for the Parish of Orleans.  **IT IS FURTHER ORDERED THAT** Civil Action No. 05-2178 is likewise equitably **REMANDED.**

New Orleans, Louisiana, this   24th   day of January, 2006.

_____

**STANWOOD R. DUVAL, JR.**
**UNITED STATES DISTRICT COURT JUDGE**